USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BENJAMIN ROSENBERG,                                          :
                                                             :
                                        Petitioner,          :
                                                             :      21-CV-5321 (VEC)
                -against-                                    :
                                                             :      OPINION AND ORDER
W.S. PLILER, Warden, FCI Otisville, Satellite                :
Camp,                                                        :
                                                             :
                                        Respondent.          :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Benjamin Rosenberg, a federal inmate,[1] brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he should be released from custody because he has accumulated sufficient earned time credits under the First Step Act of 2018, P.L. No. 115-391, 132 Stat. 5194 (2018) (the "FSA" or the "Act"), to be eligible for release. Dkt. 1. For the reasons discussed below, the Petition is DENIED.

## BACKGROUND

### I. Earned Time Credits Under the First Step Act

Congress enacted the FSA on December 21, 2018. The Act aimed to encourage the participation of federal inmates in evidence-based recidivism reduction programs ("EBRRs") and other productive activities ("PAs"). Inmates earn time credits ("ETCs") upon successful

---

[1] When the petition was filed, Rosenberg was incarcerated at FCI Otisville. See Pet., Dkt. 1 ¶ 1. According to the Bureau of Prisons' Inmate Locator, he has since been moved to a Residential Re-entry Program facility in Chicago. See Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc// (last visited Dec. 20, 2021). Because he remains in the custody of the Bureau of Prisons, his habeas petition is not moot despite his release to a half-way house. See Janakievski v. Exec. Dir., Rochester Psychiatric Ctr., 955 F.3d 314, 319 (2d Cir. 2020) ("A habeas petition is generally not moot so long as the petitioner continues to be held in the custody that he alleges is unlawful. That is so whether the petitioner is experiencing direct physical custody (e.g., incarceration), or is subject to restraints on his liberty, such as parole." (citations omitted)).

participation in those activities, and the ETCs qualify the inmates for early release from custody.[2] 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A). Under the Act, a prisoner earns 10 days of ETC for every 30 days of successful participation in EBRRs or PAs. *Id.* § 3632(d)(4)(A). A prisoner whom the BOP has determined to be at a minimum or low risk of recidivism over two consecutive assessments earns an additional 5 days of time credits for every 30 days of successful participation. *Id.*

Congress directed the Attorney General to implement the program in phases. First, within 210 days of the FSA's enactment, the Attorney General was required to develop a risk and needs assessment system to determine and address each inmate's recidivism risk. *Id.* § 3632(a). In accordance with that timeline, on July 19, 2019, the then-Attorney General announced the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). Pet. Br., Dkt. 3 at 5; Opp. Br., Dkt. 16 at 3. The FSA then gave the Bureau of Prisons (the "BOP") 180 days from the release of PATTERN to "implement and complete the initial intake risk and needs assessment for each prisoner." 18 U.S.C. § 3621(h)(1)(A). The BOP completed its initial assessment of each federal inmate under PATTERN on January 15, 2020. Opp. Br. at 4. In the last phase, over the two-year period between January 15, 2020 and January 15, 2022 (the "Final Phase-In Period"), the BOP shall "begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination." 18 U.S.C. §§ 3621(h)(1), (2). The FSA states that during the Final Phase-In Period, "priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." *Id.* § 3621(h)(3).

---

[2]    Inmates convicted of certain offenses are not eligible to earn ETCs. *See* 18 U.S.C. § 3632(d)(4)(D).

## II. Petitioner's Habeas Petition

Rosenberg is currently serving a 40-month sentence for medical billing fraud. Pet., Dkt. 1 ¶¶ 1–2. His full-term release date is January 14, 2023. Chan Decl., Dkt. 17 ¶¶ 6–7; Sentencing Computation, Dkt. 17-1. Assuming that he receives 180 days of good conduct time pursuant to 18 U.S.C. § 3624(b), he will be released on July 18, 2022. *Id.*; Opp. Br. at 6. Rosenberg claims that he has earned, and is entitled to, at least 505.74 days of ETCs based on work, classes, prayer sessions, and other independent learning that he has undertaken at FCI Otisville. Pet. ¶ 8.[3] On March 11, 2021, Rosenberg's attorney asked the Warden to award Rosenberg ETCs based on his self-proclaimed participation in work, classes, and other independent learning and prayer. *See* Letter, Dkt. 1-1. On March 26, 2021, the Warden, without explanation, denied Rosenberg's request.[4] On June 16, 2021, Rosenberg filed a petition for a writ of habeas of corpus, arguing that he should be immediately released given the amount of ETCs he has purportedly earned. Pet. ¶¶ 7, 16. The Government opposes the petition. Opp. Br., Dkt. 16.

## DISCUSSION

### I. Petitioner Failed to Exhaust His Administrative Remedies

Federal prisoners are required to exhaust administrative remedies before seeking habeas relief pursuant to 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (citing *Carmona*, 243 F.3d at 634); *see also Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996) ("Failure to exhaust administrative remedies generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice." (internal citation omitted)).

In order to exhaust administrative remedies, federal inmates must comply with the BOP's Administrative Remedy Program, a four-step process for inmates who "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). An inmate must first attempt to resolve informally the issue with prison staff. *Id.* § 542.13. If the issue is not resolved, the inmate may then submit a Request for Administrative Remedy (a BP-9 form) to the Warden. *Id.* § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the appropriate BOP Regional Director using a BP-10 form. *Id.* § 542.15(a). If the inmate is still dissatisfied, he or she may appeal to the General Counsel in the Central Office using a BP-11 form. *Id.* The Warden is required to respond within 20 days, the Regional Director within 30 days, and the General Counsel within 40 days. *Id.* § 542.18. If the inmate does not receive a response within the times allotted for reply, the inmate may consider the absence of a response to be a denial and may proceed to the next step of the process. *Id.*

---

3   Rosenberg also argues that he qualifies as an elderly offender under the FSA because he is over the triggering age of 60. Pet. Br., Dkt. 3 at 1. He argues that he should be released to home confinement on December 3, 2021, pursuant to a one-third sentencing reduction under that program. *See* 34 U.S.C. § 60541(g).

That claim was not ripe when the petition was filed in June 2021, but even if it had been, the Court does not have jurisdiction to address it. The FSA states:

> *In carrying out a pilot program* as described in subparagraph (A), the Attorney General *may* release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, *upon written request* from either the Bureau of Prisons or an eligible elderly offender or eligible terminally ill offender.

34 U.S.C. § 60541(g)(1)(B) (emphasis added). The development and scope of the elderly offender pilot program is within the discretion and control of the Attorney General and is not judicially reviewable. *See Melot v. Bergami*, 970 F.3d 596, 600 (5th Cir. 2020) ("[W]e conclude that Congress has vested the executive branch, not the judicial branch, with the power to decide which prisoners may participate in the [Elderly Offender] Program."); *United States v. Calderon*, 801 F. App'x 730, 731 (11th Cir. 2020) (per curiam) ("The district court did not err in denying Calderon's motion because it lacked jurisdiction to grant the relief he sought [under the Elderly Offender Program].")

4   The Warden suggested, however, that Rosenberg's attorney contact his executive assistant, Mr. Schreffler, if he had further questions regarding the denial. *See* Response, Dkt. 1-1. Rosenberg's attorney asserts that his attempts to contact Mr. Schreffler via phone and email were unsuccessful. Pet. Br. at 2–3; *see* Email, Dkt. 1-1.

Rosenberg does not dispute that he failed to exhaust his administrative remedies. Pet. Br. at 10–13. Instead, he argues that the Court should excuse his default. *Id.* In the habeas context, administrative exhaustion may be excused when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

### A. Exhaustion Would Not Have Been Futile

Rosenberg argues that exhaustion would have been futile because the Warden's denial of ETCs seems to be based on an "official policy of the BOP" such that "the matter is predetermined, and no level of administrative appeal is likely to produce a different result." Pet. Br. at 10 (citing *Ward v. Chavez*, 678 F.3d 1042, 1046–47 (9th Cir. 2012)). Apart from mere speculation, however, Rosenberg has not provided sufficient facts to support that assertion. *See* Pet. Br. at 10 ("As the Warden has not provided any reason or rationale for denying any earned time credit one can only conclude that the Warden is relying on some unstated and undefined BOP policy."); *id.* at 11 ("In the absence of any explanation, it can only appear that the denial of any credit was pursuant to some blanket policy against awarding the credits."); *see also Downs v. N'Diaye*, 21-CV-7326, 2021 WL 5076412, at *2 (D.N.J. Nov. 2, 2021) ("There is no support for Petitioner's conclusory allegation that it would be futile to exhaust his administrative remedies. Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals." (citation omitted)).

Rosenberg failed to complete any step of the BOP's four-step administrative review process. Chan Decl. ¶ 8. As the Government notes, "[e]specially here, where the factual record is undeveloped and disputed, 'further administrative proceedings would be useful rather than

5

futile.'"  Opp Br. at 16 (quoting *Cohen v. United States*, 20-CV-10833, 2021 WL 1549917 (S.D.N.Y. Apr. 20, 2021)).  Had Rosenberg pursued administrative relief, he could have learned that he was denied credits because: inmates are only eligible to receive ETCs for completing qualifying EBRRs or PAs within their specifically designated risk and needs categories; and the BOP has no record of Rosenberg participating in any qualifying activities.  Chan Decl. ¶¶ 18–21; Opp. Br. at 19.  He could have learned that his needs assessment had been concluded and that he was identified to have "needs" in the fields of "cognitions," "medical," and "recreation/leisure/fitness."  Chan Decl. ¶ 13; Inmate Profile, Dkt. 17-3.  Given those needs, he would also have learned which EBRRs or PAs he could participate in to accrue ETCs.  *See Vieth v. Williams*, 21-CV-170, 2021 WL 5177567, at *3 (S.D. Ill. Nov. 8, 2021) ("The questions [Petitioner] presents . . . also involve questions of fact that the administrative remedy process is best suited to determine in the first instance.  For example, are time credits available to him based on the eligibility and availability criteria of 18 U.S.C. § 3632(d)(4), and has he earned any such credits through participation in the appropriate programs to warrant his release?").

In short, the administrative review process was not futile, and Rosenberg's failure to exhaust his administrative remedies is not excused.

### B.  Exhaustion Would Not Have Caused Irreparable Harm

Rosenberg argues that further delay caused by pursuing the BOP's administrative process would run the risk of irreparable harm because his appropriate presumptive release date has passed.  Pet. Br. at 12–13 (citing *Miller v. Thomas*, 08-CV-789, 2008 WL 4693035 (D. Or. Oct. 31, 2008)).  But Rosenberg's claim that he is entitled to immediate release alone does not excuse him from exhausting his administrative remedies.  *Masselli v. U.S. Parole Comm'n*, 631 F. Supp. 1442, 1446 (S.D.N.Y. 1986) ("Federal prisoners who challenge revocations of parole must

6

exhaust administrative remedies before seeking habeas corpus relief, even though they claim they are entitled to immediate release." (citing *Guida v. Nelson*, 603 F.2d 261, 262 (2d Cir. 1979))); *see also Gaines v. Samuels*, 13-CV-3019, 2013 WL 591383, at *2 (D. Kan. Feb. 14, 2013) ("The Supreme Court has required that even those inmates who may be entitled to immediate release exhaust their administrative remedies." (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973))).

Even assuming, *arguendo*, that Rosenberg qualified for release at the time of filing his habeas petition, it is noteworthy that he failed to complete *any* step of the BOP's four-step administrative review process. Chan Decl. ¶ 8. On March 11, 2021, Rosenberg's attorney asked the Warden to award Rosenberg ETCs. *See* Letter, Dkt. 1-1. Although the letter does not satisfy any of the four steps of the BOP's review process, he made the request more than three months before he filed his habeas corpus petition. *See* Pet., Dkt. 1 (filed on June 16, 2021). Rosenberg does not explain why he could not have used those same three months to exhaust the administrative procedures. As described above, the Warden has 20 days to reply, the Regional Director 30 days, and the General Counsel 40 days. *See* 28 C.F.R. § 542.18. In the three months between making the request to the Warden and filing suit, Rosenberg could have entirely exhausted his administrative remedies. Rosenberg would not have been harmed, let alone irreparably harmed, by making use of those three months to exhaust the administrative process.

Courts in other circuits have similarly denied habeas petitions because the petitioner failed to exhaust his or her administrative remedies when there was ample time to have done so. *See Smith v. Hollingsworth*, 14-CV-1778, 2016 WL 4357489, at *2 (D.N.J. Aug. 15, 2016) ("[A]ny claim of irreparable harm stems from Petitioner's own inaction. Significantly, where Petitioner has not presented his challenge to the calculation of his good conduct time to the BOP,

7

there is no administrative determination, final or otherwise, for this Court to review."); *Drummond v. Martinez*, 09-CV-1258, 2009 WL 3241851, at *4 (M.D. Pa. Oct. 5, 2009) ("The facts here demonstrate an unwillingness by the petitioner to seek out administrative remedy. As such, the petitioner had adequate time to exhaust, or at least initiate his administrative remedies . . ."); *Segura v. Wilner*, 08-CV-1480, 2008 WL 4610014, at *3 (D. Colo. Oct. 9, 2008) ("However, [Petitioner] fails to recognize that any harm he has suffered as a result of delays in processing this action could have been avoided if he had exhausted administrative remedies prior to filing this action."). Simply put, Rosenberg has not shown that he would have been irreparably harmed by taking the time required to pursue the administrative process.

In short, Rosenberg failed to exhaust his administrative remedies. Although that alone is sufficient to deny his petition, the Court will now consider his petition on the merits.

## II. Rosenberg is Not Entitled to Any Earned Time Credits

Even if Rosenberg had exhausted his administrative remedies, his petition would be denied on the merits. The Government argues that Rosenberg's petition must be denied as unripe, because the FSA does not require that the BOP begin applying ETCs until the end of the Final Phase-In Period. Opp. Br. at 8–9 (citing 18 U.S.C. § 3621(h)(4)). Therefore, the Government argues, even if Rosenberg had successfully participated in qualifying EBRRs and PAs, the BOP would still have discretion whether to apply ETCs that Rosenberg earned for his participation before January 15, 2022. Opp. Br. at 9, 13.

Rosenberg, on the other hand, argues that "[a] chief objective of the FSA is to reduce recidivism" and that any delay in awarding ETCs contravenes the Act's stated objective. Reply, Dkt. 18 at 13. Rosenberg cites to the fact that the FSA prioritizes program placement during the Final Phase-In Period based on a prisoner's proximity to his or her release date. 18 U.S.C. §

8

3621(h)(3).  Such a provision, he argues, would not make sense if those inmates are not eligible to realize the ETC incentive during the Final Phase-In Period — they are "on the cusp of gaining freedom and re-entering society, and there is a compelling reason to incentivize their successful participation in EBRR programming and productive activities immediately" to "thereby lessen the likelihood that they will engage in recidivist activity when released." Pet. Br. at 8–9.  By explicitly prohibiting the award of ETCs for programs completed before the FSA was enacted, *see* 18 U.S.C. § 3632(d)(4)(B), Rosenberg argues, Congress "evidenc[ed] its understanding that credits would be awarded for programs completed after that date." Pet. Br. at 15.  Congress also directed that the phase-in would continue to occur "while prisoners are participating in and completing" EBRRs and PAs.  18 U.S.C. §§ 3621 (h)(1)(C), (2)(B).

Many courts that have considered this issue have found similar habeas petitions to be unripe, reasoning that the FSA does not require the BOP to begin awarding ETCs until January 15, 2022.  *See, e.g.*, *Distefano v. Pliler*, 21-CV-773, 2021 WL 3524130, at *2 (S.D.N.Y. July 5, 2021) (collecting cases); *Cohen v. United States*, 20-CV-10833, 2021 WL 1549917, at *3 (S.D.N.Y. Apr. 20, 2021); *United States v. Diaz*, 19-CR-65, 2021 WL 2018217, at *2 (S.D.N.Y. May 20, 2021).  Those courts reason that 18 U.S.C. § 3621(h)(2)[5] only requires that the BOP have EBRR programming and PAs available for all prisoners at the conclusion of the Final

---

[5]    18 U.S.C. § 3621(h)(2) provides in relevant part:

> . . . [S]o that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall –
>
> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

Phase-In Period, while 18 U.S.C. § 3621(h)(4) gives the BOP discretion whether to award prisoners incentives and rewards (*i.e.*, ETCs) for participating in EBRRs and PAs before January 15, 2022.[6] The Government urges the Court to follow the holdings in those cases and find that Rosenberg's petition is unripe. Opp. Br. at 11.

The Court disagrees. Those cases "appear to conflate the analysis of constitutional ripeness with the merits of the petitioners' claims . . .." *Rubinov v. Pliler*, 21-CV-4397, 2021 WL 5567826, at *5 (S.D.N.Y. Nov. 29, 2021). As Judge Liman stated in *Rubinov*,

> As a matter of Article III justiciability, it is difficult to see how this claimed injury is, as Respondent would have it, not any injury at all or not imminent. If Petitioner is correct on the merits of his claim and the BOP should have applied the FSA time credits he claims he has earned, Petitioner is currently being imprisoned when in fact he should not be. . . . Petitioner's habeas petition thus . . . is ripe for review.

*Id.* Here, similarly, the Court finds that the issue at hand is not one of ripeness; rather, Rosenberg's petition fails on the merits because the BOP has not phased Rosenberg into the program.

Pursuant to the FSA, January 15, 2022, is the deadline by which the BOP must begin offering EBRRs to every inmate. 18 U.S.C. § 3621(h)(2)(A) provides that, by that date, the BOP "shall provide such evidence-based recidivism reduction programs and productive activities for all prisoners." As to the availability of qualifying programming before the deadline, the statute uses discretionary language: "the Bureau of Prisons *may* begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison" before the January

---

[6] 18 U.S.C. § 3621(h)(4) provides:

> Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

15, 2022 deadline. *See* 18 U.S.C. § 3621(h)(4) (emphasis added). Thus, during the Final Phase-In Period, the BOP is permitted but not required to make qualifying programming available to all prisoners.

Here, Rosenberg has yet to be phased into the program.[7] As the Government explains, he had not yet been assigned to any EBRRs or PAs in line with his needs assessment. Rosenberg was determined to have needs in the "cognitions," "medical," and "recreation/leisure/fitness" categories. Chan Decl. ¶ 13; Inmate Profile, Dkt. 17-3. None of the courses or work that Rosenberg has undertaken is a BOP-approved EBRR or PA in those needs categories. Chan Decl. ¶¶ 15, 17, 18–19; Inmate Education Data Transcript, Dkt. 17-8; FSA Approved Programs Guide, Dkt. 17-5. Rosenberg's independent prayer sessions and independent learning activities for which he has claimed ETCs, while perhaps enriching to him personally, similarly do not qualify. Chan Decl. ¶¶ 20–21; FSA Approved Programs Guide, Dkt. 17-5.

Nor do the activities that Rosenberg asserts he completed automatically qualify as EBRRs or PAs. Rosenberg seeks ETC and to be released from prison early based on his representation that he spent "approximately 1,118 hours" in independent prayer sessions, and spent "approximately 2,880 hours" on independent study of religion and ethics. Pet. ¶ 8. Putting aside the fact that there is no evidence that his prayers or study have any relationship to his assessed needs, the BOP has no record that Rosenberg completed those unsupervised activities. Chan Decl. ¶¶ 20–21; Opp. Br. at 19. Rosenberg essentially asks this Court to take him at his

---

7   Rosenberg argues that the BOP was obliged to phase him in because of his impending release date. *See* Reply at 9–10 (citing 18 U.S.C. § 3621(h)(3)). Rosenberg is not correct. The FSA provides that during the Final Phase-In Period, "the priority for [EBRR] and [PAs] shall be accorded based on a prisoner's proximity to release date." 18 U.S.C. § 3621(h)(3). Although Rosenberg was waitlisted for four programs, two of which address his identified needs, Chan Decl., Dkt. 17 ¶ 16, there is no evidence that Rosenberg was not given priority in relation to inmates that have full-term release dates later than his. The BOP may have limited EBRR program offerings at the present moment, and the Court cannot require it to expand such programming to all prisoners until January 15, 2022. 18 U.S.C. §§ 3621(h)(4), 3621(h)(2)(A).

11

word and release him on the strength of his assertion that he contemplated and mused on certain topics while in custody. The FSA, however, defines EBRRs as programs that are likely to be effective in reducing recidivism based on "empirical evidence" or "research," and that are "designed" by the BOP to help prisoners succeed in their communities upon release. 18 U.S.C. § 3635(3). Similarly, PAs are defined as activities "designed" to help prisoners remain productive and "thereby maintain" a low risk of recidivism. *Id.* § 3635(5). Those definitions would be meaningless if prisoners were allowed to claim ETCs for activities completed outside of a formal curriculum.[8]

The Court takes no position on the question of whether BOP must award credits to an inmate who participates in qualifying programming, or whether, as the Government argues, the discretionary language in 18 U.S.C. § 3621(h)(4) allows BOP to decline to award ETCs to an inmate who successfully completed needs-based EBRRs and PAs in the past. *See* Opp. Br. at 9. For inmates who have already been "phased in" under the FSA, the BOP may be obliged to apply ETCs upon completion of the assigned programming. *See* 18 U.S.C. § 3632(d)(4)(A) ("A prisoner [who is not ineligible] who successfully completes evidence-based recidivism reduction programming or productive activities, *shall* earn time credits . . ." (emphasis added)). *Compare Rubinov*, 2021 WL 5567826, at *6 (finding that it is within the BOP's discretion to decline to award ETCs until January 15, 2022, even to inmates who have been phased in and have

---

[8] In his Reply, Rosenberg requests that the Court resolve the parties' dispute over the number of ETCs Rosenberg earned by directing the parties "to supplement the record with information that would permit the Court to properly calculate and determine the number of credits that Mr. Rosenberg earned." Reply, Dkt. 18 at 17 (citing *Hare v. Ortiz*, 20-CV-14093, 2021 WL 391280 (D.N.J. Feb. 4, 2021)); *see also id.* at 6 n.1 (arguing that the Court could schedule a brief hearing to determine the accurate number of ETCs earned by Rosenberg). As an initial matter, any factual deficiencies could have been resolved had Rosenberg exhausted administrative remedies. Even so, Rosenberg acknowledges that the BOP is solely responsible for designating qualifying programs under the FSA. Reply at 17. There is no room, therefore, for Rosenberg to argue that undesignated courses *should* qualify as EBRRs and therefore he must be given ETCs for them, regardless of the BOP's view. Accordingly, any request to file supplemental briefing or to schedule an evidentiary hearing is denied.

participated in qualifying programming) *with Goodman v. Ortiz*, 20-CV-7582, 2020 WL 5015613l, at *2 (D.N.J. Aug. 25, 2020) (holding that the BOP is required to apply ETCs to inmates who have completed qualifying programming, even if it was completed before January 15, 2022).

Rosenberg relies on *Goodman*, in which the Court granted habeas relief under the FSA. Pet. Br. at 14. But *Goodman* is distinguishable. In *Goodman*, there was no dispute that the petitioner had already been "phased in" and had participated in approved needs-based programming, thereby earning 240 days of ETCs. *Goodman*, 2020 WL 5015613 at *2. Here, however, "Petitioner claims he has earned 505.74 days of ETCs [and] Respondent contends that Petitioner has earned none." Opp. Br. at 17; *see also McTier v. Ortiz*, 20-CV-16555, 2021 WL 4490231, at *2 (D.N.J. Sept. 30, 2021) (distinguishing the case from *Goodman* on the basis that there, "[t]he only dispute before the Court, aside from exhaustion, was whether the ETC had to be applied before January 15, 2022 . . . . Here, the BOP opposes the petition on more than the effective date; it also argues Petitioner is not entitled to the credits."). Rosenberg, unlike Goodman, has not provided any documentation to prove that he has earned 505.74 days of ETCs by participating in qualifying programming, and the BOP has provided documentation that proves he has not. Accordingly, he is not entitled to relief on the merits.

In short, Rosenberg has not earned any ETCs because he has not yet completed any qualifying needs-based EBRRs or PAs.

## CONCLUSION

For the reasons discussed above, the Petition is DENIED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Date: December 20, 2021**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**